IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA          *

vs.                               *

ERIN BROADWELL,                   *        CASE NO. 4:13-CR-41 (CDL)

    Defendant.                   *

_____

O R D E R

Motions to suppress evidence based on alleged violations of the Constitution highlight the natural tension between the Government's legitimate law enforcement function and the protection of the people's civil liberties.  It falls upon the judicial branch ultimately to decide in each case whether the line between permitted law enforcement conduct and prohibited constitutional infringement has been crossed.  Defendant argues in her pending motion to suppress that law enforcement crossed that line in this case and violated her Fourth Amendment rights when they stopped her vehicle without probable cause and subsequently searched her.  The Government disagrees.  Having conducted an evidentiary hearing and with the benefit of written briefs and oral argument, the Court denies Defendant's Motion to Suppress (ECF No. 25).

FACTS[1]

On the evening of December 22, 2012, the Columbus Police Department's Special Operations Unit was conducting undercover surveillance of a suspected drug house.  They observed Defendant drive a pickup truck to the house, get out of the vehicle along with her passenger, enter the house briefly, return to her truck, and leave.  The surveillance officers suspected that Defendant and her passenger entered the house to purchase illegal drugs, and they notified other members of the Special Operations Unit who then attempted to follow Defendant's truck.  These officers intended to trail the truck and pull it over if the driver committed a traffic violation.  Before observing any traffic violation, the officers turned on their blue lights and engaged in a hot pursuit of the truck for several blocks.  Upon pulling up closely behind the truck, the pursuing officer contends that he noticed the truck's tag light was inoperative, and he pulled the vehicle over.[2]  While conducting the traffic stop, the officers discovered illegal drugs.  Defendant was subsequently indicted for possession of methamphetamine with intent to distribute and for a related conspiracy charge.

---

[1] These factual findings are based on evidence presented at the evidentiary hearing held February 3, 2014.
[2] The "tag light" should not be confused with the "tail light" or "brake light."  The "tag light" is not a safety device, but it consists of two small lights which have as their sole purpose the illumination of the rear license plate.

CONCLUSIONS OF LAW

Defendant filed a motion to suppress the drugs discovered during the traffic stop, claiming that the tag light on her vehicle was not inoperative and that the traffic stop was pretextual.  She maintains that the stop and search violated her Fourth Amendment right to be free from unreasonable searches and seizures.  Defendant's only challenge to the search is based upon her contention that the stop violated the Fourth Amendment. Therefore, the Court's analysis is restricted to the traffic stop.  If it violated the Fourth Amendment, the subsequent search would be invalid and the items seized pursuant to it must be suppressed.  On the other hand, if the stop passes constitutional muster, the subsequent search was authorized.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.  *Delaware v. Prouse,* 440 U.S. 648, 653 (1979).  An automobile stop thus must not be "unreasonable" under the circumstances.

Generally, the decision to stop an automobile is not unreasonable when police briefly detain motorists to investigate a reasonable suspicion that the vehicle's occupants have engaged in criminal activity. *United States v. Sharpe,* 470 U.S. 675 (1985); *see also Terry v. Ohio,* 392 U.S. 1, 30 (1968) (holding that officers may stop individuals and make reasonable inquiries when officer has reasonable suspicion "criminal activity may be afoot"). But for an investigatory stop to comply with the Fourth Amendment, the police must have "reasonable suspicion" based on the totality of the circumstances. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). To be reasonable, the officer's suspicion must be more than just a hunch. *United States v. Sokolow,* 490 U.S. 1, 7 (1989). There must be an objective justification for the stop. *Id.* Here, the Government does not argue that the police had a reasonable suspicion that Defendants had engaged in illegal drug activity to justify an investigatory stop. Instead, the Government maintains that the officers had probable cause to believe that Defendant was in violation of the state law requiring operative tag lights on vehicles, O.C.G.A. § 40-8-23(d), and therefore, the stop was justified.

The decision to stop an automobile is not unreasonable if the police have probable cause to believe that a traffic violation has occurred. *Prouse,* 440 U.S. at 661. And it does

4

not matter that the officer also believes the motorist has committed some other offense. *Whren v. United States,* 517 U.S. 806, 813 (1996). The fact that a law enforcement officer may have some "ulterior motive" does not convert a constitutional stop supported by probable cause into a violation of the Fourth Amendment. *See id.* at 819 (pretextual stops supported by probable cause do not violate the Fourth Amendment). Even if the primary motive of the officers involved in Defendant's stop was to discover illegal drugs in the vehicle, that motive did not prevent them from stopping Defendant's vehicle if they had probable cause to believe that she had violated the tag illumination statute. *Id.* Any suggestion that the pretextual nature of the stop somehow supports the finding of a Fourth Amendment violation has been soundly rejected by the Supreme Court. *Id.* at 812. But that does not end the analysis in the present case. Defendant argues not only that the police were motivated by something other than a desire to enforce traffic laws, but that they fabricated the violation. Therefore, the Court must decide the very narrow, but dispositive, issue of whether probable cause existed for believing that Defendant's tag light was not working.

The resolution of this issue does not depend on a complicated examination of a multitude of facts to determine whether, under the totality of those circumstances, a reasonable

5

officer would have concluded that the Defendant violated the traffic laws. Instead, the Court must make a simpler, yet perhaps more difficult, factual determination of which witnesses to believe. The officer who pulled Defendant's vehicle over testified that he observed the rear of Defendant's truck and that the tag light was inoperative. Defendant testified exactly the opposite—that her tag light was working. The owner of the truck, who was also Defendant's fiancé, testified that he had never had any problem with the tag light. To resolve this conflict in the evidence, the Court must evaluate the credibility of the witnesses.

The officer who stopped Defendant's vehicle is an experienced and trained law enforcement officer. He testified clearly and unequivocally that he observed the tag area of Defendant's vehicle before he pulled Defendant over, and the tag was not illuminated by the tag lights. No evidence was presented that he had any personal interest in the case or a specific bias against the Defendant. Defendant's counsel was able to establish that the officer turned on his blue lights before he personally saw Defendant's tag area, and counsel effectively cast some doubt on the officer's contention that another officer had radioed him that Defendant's tag was not illuminated. But this evidence primarily establishes that the officer had an ulterior motive for pulling Defendant over.

Everyone agrees that this was not a random stop for a traffic violation during which illegal contraband was discovered. The officer's primary motivation for following the Defendant was suspicion that drugs were likely in her vehicle, and he hoped she would commit a traffic violation so that he could pull her over. In other words, this was a "pretextual stop." The officer was clearly more interested in what he may find inside Defendant's truck than whether he could see her tag. From a civil libertarian perspective, such pretextual stops raise legitimate concerns because they are prone to abuse and difficult to prove. Prior precedent from this Circuit has even found stops similar to this one to violate the Fourth Amendment. *See United States v. Valdez,* 931 F.2d 1448 (11th Cir. 1991) (finding unconstitutional a pretextual stop when police followed car they believed contained narcotics, were told to follow car and stop it, allegedly observed traffic violation, and followed vehicle for another eighteen blocks before stopping it). But as explained previously, that precedent is no longer the law of the land and has not been for some time. The Supreme Court has made it clear that the existence of an ulterior motive for a stop does not invalidate a stop otherwise supported by probable cause. *Whren,* 517 U.S. at 812. Even if the Court were personally persuaded by counsel's passionate appeal for the

7

protection of civil liberties, the Court must be guided by the rulings of the Supreme Court.

Defendant's counsel begrudgingly acknowledges that pretextual stops are no longer constitutionally suspect solely because they are pretextual. He nevertheless suggests that the existence of pretext indicates not only that the police were guided by ulterior motives, but that if they would engage in pretext, they would not hesitate to fabricate a traffic violation. The Court refuses to make this leap and does not find it supported by the present record. If a law enforcement officer may legitimately make a constitutional pretextual stop based upon the observation of a traffic violation, it would be speculation to conclude that the pretextual nature of the stop standing alone warrants any inference that the traffic violation was fabricated. To convince this Court that the officer perjured himself on the witness stand when he testified unequivocally that he observed an inoperative tag light before he stopped Defendant's vehicle, Defendant was required to impeach his testimony. The only evidence presented for impeachment purposes was the omission of any reference in the incident report that the officer had been previously notified that Defendant's tag light was inoperative and testimony from Defendant and her fiancé that the tag light was operative.

The Court finds the absence of any reference in the incident report to prior notification of the inoperative tag light to be reconcilable with the officer's testimony. The officer testified that he pulled Defendant's vehicle over because *he* observed the unilluminated tag. He did not make the stop because someone else told him the tag light was not operative. Therefore, it was not critical that the prior notification be recorded in the incident report, and the Court finds its omission to be immaterial. It certainly would not warrant a finding that the officer fabricated the traffic violation and committed perjury at the evidentiary hearing.

The Court also discounts the testimony of the Defendant and her fiancé. The Defendant clearly has a strong personal interest in the outcome of her motion to suppress and a real motive not to tell the truth. Her fiancé, who owned the truck, similarly has a motive to protect his future wife from a possible lengthy prison sentence. In addition to his obvious bias, the testimony of Defendant's fiancé must be considered in light of several felony convictions which raise serious questions about his credibility as a witness. As the factfinder, the Court finds the testimony of the law enforcement officer more credible than the testimony of the Defendant and her fiancé.

Defendant failed to impeach the officer's testimony sufficiently for it to be completely disbelieved. With no other credible evidence demonstrating that the tag light was operative, the Court finds that the officer had probable cause to believe Defendant had committed the traffic violation.[3] Therefore, the stop and subsequent search did not violate the Fourth Amendment.

CONCLUSION

For the reasons explained in this Order, Defendant's Motion to Suppress (ECF No. 25) is denied.

IT IS SO ORDERED, this 6th day of February, 2014.

S/Clay D. Land

CLAY D. LAND<br>UNITED STATES DISTRICT JUDGE

---

[3] The Court reviewed the video of the pursuit and stop of Defendant and found it inconclusive as to whether her tag light was illuminated.